IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Walter Lundy, ) | |
| ) | Civil Action No. 7:13-cv-0062-TMC-JDA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Phillips Staffing, a/k/a S.B. Phillips, ) | |
| Company, Inc. ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on Defendant Phillips Staffing's ("Defendant") motion for summary judgment. [Doc. 24.] Plaintiff Walter Lundy ("Plaintiff") alleges a sole count of disability discrimination pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

Defendant is a "full service staffing firm that provides employees" to other companies who are in need of temporary or permanent workers. [Doc. 24-5 ¶ 1.] During the summer of 2011, Defendant was looking to fill positions at Hubbell Lighting ("Hubbell"). [*Id.* ¶ 3.] Plaintiff had worked for Defendant previously and his application was still on file. [*See id.*] Stephanie Hoffman ("Hoffman"), Defendant's client service representative, reached out to Plaintiff to find out if he was interested in the Hubbell job. [*Id.* ¶ 4.] Plaintiff

indicated his interest and went to Defendant's office on July 29, 2011, to fill out paperwork.[1] One part of the paperwork was Defendant's "Post Offer Medical Questionnaire." [*Id*.] The questionnaire included an inquiry as to whether Plaintiff had "any other disease, condition or impairment which is permanent in nature" ("Question 17") [*Id*. ¶ 6.] Plaintiff answered "no" to this question. [*Id*.]  Plaintiff testified that it was his practice to be truthful on such documents. [Doc. 24-4 at 40:10–12.]  Plaintiff testified that he filled out the paperwork for Defendant truthfully. [*Id*. at 46:24–25.] The Post Offer Medical Questionnaire states at the top "[i]mportant note: [f]ailure to answer this questionnaire truthfully may result in your termination for falsifying documents." [Doc. 24-7.] Immediately below that statement, the document reads "[t]he purpose of this form is to insure that you will be able to safely and successfully perform all job functions." [*Id*.]

Plaintiff began work with Hubbell as an unloader; Defendant received very positive feedback as to Plaintiff's performance. [Doc. 24-5 ¶ 10.] On October 31, 2011, Hubbell called Hoffman to inform her that they would like to promote Plaintiff to a fork lift operator position and thus Plaintiff needed a medical examination for his commercial drivers' license. [*Id*. ¶ 11.]  Defendant arranged for Plaintiff to be examined by Accurate Diagnostics, a third party medical company. [*Id*. ¶ 12.] During Plaintiff's medical examination, in response to a question about his medications, he disclosed that he was taking Atripla for HIV. [Doc. 24-4 at 50:22–23.] Plaintiff was diagnosed with HIV in 2003.

---

[1] Defendant claims that the paperwork, including the medical questionnaire, was filled out after Defendant had made an offer and Plaintiff had accepted. [Doc. 24-5 ¶ 4.]  There is a factual dispute on this matter, but as discussed below, whether the medical questionnaire was a proper inquiry pursuant to the ADA is not properly before the Court at this time.

2

[*Id*. at 51:1.]   The nurse practitioner from Accurate Diagnostics did not write that he was on Atripla but wrote on his medical form that he had been taking a prescription for HIV since 2008. [Doc. 24-8.] The nurse practitioner certified that Plaintiff was fit to receive a commercial driver's license. [*Id*.]

Hoffman received the results from Plaintiff's exam and saw that he reported having a prescription to treat his HIV since 2008. [Doc. 24-5 ¶ 14].  Hoffman concluded that Plaintiff had not been truthful on his medical questionnaire because he did not report his HIV in response to Question 17. [*Id*. ¶ 15.] Hoffman testified that Plaintiff was in violation of Defendant's policy because he provided what she considered to be false information on his medical questionnaire.  [*Id*. ¶ 17.] Hoffman has personally terminated approximately five employees for providing false information on Defendant's medical questionnaire. [*Id* ¶ 7.] Hoffman approached others at Defendant to ascertain whether they should make an exception to this policy for Plaintiff because of his positive job performance.  [*Id*. ¶ 17.] Ultimately, Defendant determined that Plaintiff should be terminated for providing false information on his medical form.  [*Id*. ¶ 18.]

Hoffman called Plaintiff and asked him to come meet her on November 7, 2011, before he reported to Hubbell.  [*Id*. ¶ 19.] At the meeting, Hoffman told Plaintiff that he was being terminated "for providing false information on his Post Offer Medical Questionnaire." [*Id*.; see also Doc. 24-4 at 53:9–10.]   Plaintiff testified that during the meeting, at which another female employee from Defendant was present, Defendant's representatives asked

3

him what would have happened if he had gotten hurt and EMS had come and they did not know about his HIV status. [Doc. 24-4 at 59:10–60:20.]

Plaintiff acknowledges that he answered "no" to Question 17 but states that he did not think he needed to answer the question in the affirmative if he "could perform the job that [he] was sent to do." [Doc. 24-4 at 53:20–23; 54:7–9.] He testified further that "if I let anyone know that I'm HIV, I'm not going to find a job." [*Id*. at 56:6–7.] He stated that no one employed with Defendant ever said anything to him to lead him to believe that he would not have been hired if he disclosed his HIV status, [*id*. at 56:8–14], but that his firing after Defendant found out about his HIV status is indicative of such discrimination. [*Id*. at 85:4–14.] He also testified that he thought it was reasonable to be terminated for falsifying something on an application. [*Id*. at 39:23–40:2.]   Defendant's Vice President of Operations, Pat Fountain, averred that Plaintiff was terminated because of his falsification of documents and not because of his HIV status.  [Doc. 24-10 ¶ 15.] The Company determined it was important to enforce the policy forbidding false statements on documents uniformly. [*Id*. ¶ 11.]

Plaintiff, proceeding pro se, filed a charge of discrimination with the EEOC on November 21, 2011. [Doc. 32-1.] In his Charge, he stated that he was "given a questionnaire to complete and one of the questions asked was whether or not I had any illness or injury in the last 5 years. I answered no because I thought the questions referred to being hurt on the job or having surgery." [*Id*.] Plaintiff stated he believed he was discriminated against because if his disability, in violation of the ADA. [*Id*.]  Subsequently,

4

Plaintiff filed his Complaint in state court; the case was removed to this Court on January 4, 2013. [Doc. 1.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

5

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

To survive summary judgment on an ADA discrimination claim,[2] a plaintiff must first demonstrate that (1) he was a qualified individual who had a disability; (2) he was terminated; (3) he was fulfilling his employer's legitimate expectations when he was terminated; and (4) the discharge or adverse employment action gives rise to a "reasonable inference of unlawful discrimination."[3]  *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).  If Plaintiff establishes these four prongs, he has established a prima facie case of discrimination and the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason, which "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 58.  If Defendant articulates such a reason, "the presumption created by the prima facie case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that []he has been the victim of intentional discrimination."  *Ennis v. Nat'l Ass'n of Bus. And Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). "The Fourth Circuit has held that the 'motivating factor' causation standard of Title VII is applicable to ADA claims.  Therefore, a plaintiff who 'demonstrates that his or her disability played a motivating role in the employment decision is 'entitled to

---

[2]The Court agrees with Defendant that Plaintiff has not yet stated a claim for improper medical inquiry under the ADA because Plaintiff's Complaint does not include such a claim.  Additionally, it does not appear from the current record that Plaintiff has exhausted his administrative remedies for such a claim, but the Court need not consider whether his remedies are exhausted because the claim is not properly in his Complaint. The Court denied leave to amend for reasons set forth in this Court's prior Orders.  [Docs. 23, 26.]

[3] Plaintiff testified that he had no evidence of direct discrimination. [Doc. 24-4 at 56:8–14.]

relief.'" *Chauncey v. Life Cycle Eng'g.*, Case No. 12-CV-968-DCN, 2013 WL 5468237, at *7 (D.S.C. Sept. 30, 2013) (quoting *Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999)).

Defendant first contends that Plaintiff cannot meet his prima facie case because he cannot demonstrate that he was "disabled" within the meaning of the ADA. Under the ADA, disability is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). Plaintiff claims he has a disability under both (A) and (C).

The Supreme Court in *Bragdon v. Abbott* determined that "HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease." 524 U.S. 624, 638 (1998). The ADA was amended in 2008 to, as Defendant admits, "broaden[] the way the statutory terms should be interpreted." [Doc. 24-1 at 9.]; *see also* ADA Amendments Act of 2008, P.U.B. L. No. 110-325, 122 STAT 3553 (2008). The statute now defines a major life activity as follows:

> (A) In general
>
> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
>
> (B) Major bodily functions
>
> For purposes of paragraph (1), *a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system*, normal cell growth, digestive, bowel, bladder,

>  neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2) (emphasis added).

Courts have arguably not reached a definitive conclusion as to whether asymptomatic HIV is a per se disability. Defendant relies on *Runnebaum v. NationsBank of Maryland, N.A.* for the argument that the Fourth Circuit has declined to adopt a per se status of disability to asymptomatic HIV. *See* 123 F.3d 156 (4th Cir. 1997). The Court finds such reliance unpersuasive. First, *Runnebaum* determined that asymptomatic HIV did not constitute an impairment, which the Supreme Court expressly overruled in *Bragdon*. Second, *Runnebaum* was decided well before the ADA statutory changes, which by Defendant's own admission, expanded the statutory definition of a major life activity. At the time *Runnebaum* was issued, the term "major life activity" was not defined in the statute. *Id.* at 170. While this Court does not intend to hold that asymptomatic HIV is a per se disability under the ADA, Plaintiff has presented evidence that his HIV has affected one or more of his major life activities and affects his immune system. [Doc. 27-2.] Moreover, other courts in this District have found that asymptomatic HIV meets the disability requirement under the ADA. *Young v. White*, Case No. 11-CV-1125-JFA, 2012 WL 4324418, at *3 (D.S.C. Sept. 19, 2012) (citing *Bragdon*, 524 U.S. at 641–42). Therefore, the Court determines that this Plaintiff meets the requirements for a disability under 42 U.S.C. § 12102(1)(A). As a result, the Court need not consider whether Plaintiff was "regarded as" disabled under § 12102(1)(C).

Defendant admits that Plaintiff was terminated and thus meets the second prong of the prima facie inquiry. The third part of the test, which Defendant contends Plaintiff cannot meet, is whether Plaintiff was meeting Defendant's legitimate expectations for Plaintiff's job performance at the time he was terminated. The pertinent time period for assessing whether an employee was meeting his employer's legitimate expectations is at the time of the adverse action. *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005). Defendant relies upon *Wells v. Briggs Construction Equipment, Inc.*, for the proposition that because Plaintiff violated Defendant's policy at the time of termination, he was not meeting Defendant's legitimate expectations. *See* Case No. 08-CV-3634-JFA, 2010 WL 2991673 (D.S.C. May 12, 2010). In *Wells*, however, the plaintiff was terminated because he failed to meet his required budgetary intake for four months–a required part of his job. *Id.* at *4. Here, Defendant has acknowledged that Plaintiff had excellent job performance and that both Hubbell and Defendant were pleased with his performance. [Doc. 24-5 ¶ 17.] Additionally, Defendant considered whether an exception should be made for Plaintiff's alleged falsification because Plaintiff's job performance was so satisfactory. [*Id.*] Defendant conflates the fourth prong of the inquiry, whether the termination occurred under circumstances giving rise to an inference of discrimination, with this prong, which is meant to focus on Plaintiff's job performance. For purposes of this inquiry, Plaintiff must show that he was "qualified in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006) (quoting *Loeb v. Textron, Inc.*, 600

F.3d 1003, 1013 (1st Cir. 1979)).  Defendant has admitted Plaintiff's performance was more than just adequate, but commendable.  Therefore, the Court finds Plaintiff meets the job performance prong of the prima facie inquiry.

The final inquiry is whether the termination raises a "reasonable inference" of discrimination.  Defendant argues Plaintiff cannot meet this standard because he offers nothing but his "subjective belief" that he was discriminated against.  The Court disagrees.  Plaintiff was discharged immediately after Defendant discovered his HIV status. *See Lettieri v. Equant Inc.*, 478 F.3d 640 (4th Cir. 2007) (discussing the relationship between the temporal proximity of the employer's knowledge of a protected activity or condition and the adverse employment action in a retaliation context).[4]  He testified consistently in his deposition and affidavit that Defendant's agents made comments at his termination meeting inferring that Plaintiff's condition may present a danger to emergency workers or other employees if he were hurt.  [Doc. 24-4 at 59:10–60:20.] Therefore, Plaintiff has presented evidence raising a "reasonable inference" of discrimination–particularly as the Fourth Circuit has counseled that the prima facie case is not meant to be "onerous" but such that if Plaintiff's evidence is sufficient so that "if the employer remains silent, the plaintiff would be entitled to judgment as a matter of law," then Plaintiff has satisfied his

---

[4] The Court recognizes that issues of temporal proximity typically arise in retaliation cases, where employees allege that the employer knew of a protected activity and retaliated soon after with an adverse job action, and argue that temporal proximity is an indication of causation.  The same analysis is applicable here.  The immediacy between the revelation of Plaintiff's HIV-positive status and his termination is potentially indicative of causation.

11

prima facie case. *Ennis*, 53 F.3d at 59 (citing *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Plaintiff has met that burden here.

As Plaintiff has established his prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for termination. Defendant has articulated that Plaintiff was terminated because he falsified information on Defendant's Post Offer Medical Form. The Court finds that this is a legitimate, non-discriminatory reason for termination. Plaintiff himself acknowledged that an employee's alleged misinformation on a form would be sufficient reason for termination. [Doc. 24-4 at 39:23–40:2.] Therefore, the Court must make the final determination of whether Plaintiff has presented sufficient evidence that he was the victim of intentional discrimination to withstand summary judgment.

The Court finds that Plaintiff has presented sufficient evidence for a reasonable jury to conclude that Defendant unlawfully discriminated against him. The Court is mindful that it is inappropriate for the Court to determine whether Defendant's proffered reason was "wise, fair or even correct" so long as it was the actual reason for Plaintiff's termination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). However, the Court finds that there is a question of material fact as to whether Plaintiff's termination was in fact motivated by his alleged fabrication on the medical form or because of unlawful discrimination based on his HIV positive status. First, the Court finds there to be a question of fact as to whether Defendant reasonably concluded that Plaintiff fabricated information on his medical form. Defendant

12

has made much of the fact that the medical form states "[i]mportant note: [f]ailure to answer this questionnaire truthfully may result in your termination for falsifying documents," [Doc. 24-7], but fails to point out that directly below that statement, the form reads that "[t]he purpose of this form is to insure that you will be able to safely and successfully perform all job functions" [*id*]. Defendant has admitted that Plaintiff was safely and successfully performing all job functions and Plaintiff testified that he understood the question to be asking whether he had any permanent conditions that would affect his job performance.

Moreover, Defendant has not articulated a definition for the term "any other disease, condition or impairment which is permanent in nature" on its medical form and the Court finds there to be a question of fact (which neither party sufficiently addresses) as to what reasonably constitutes a condition "permanent in nature" and whether HIV would qualify. Additionally, Defendant contends that its agents did not make comments about EMS and the repercussions if Plaintiff were injured on the job during Plaintiff's termination meeting, but Plaintiff consistently testified to the contrary. [Doc. 24-4 at 59:10–60:20.] Such is a question of fact and credibility for a jury to make. If such statements were indeed made, a jury could reasonably conclude that these statements demonstrated Plaintiff was being terminated because of his HIV status and the perceived danger that he presented, rather than for allegedly lying on his form. "Contradictions between an employer's proffered explanation and the contemporaneous statements of the employer are convincing evidence of pretext." *EEOC v. Town & Country Toyota, Inc.*, 7 Fed. App'x. 226 (4th Cir.

2001) (unpublished). Therefore, the Court finds that for purposes of summary judgment, Plaintiff has demonstrated that Defendant's legitimate reason may be pretextual.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

December 10, 2013
Greenville, South Carolina