IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Walter Lundy, | ) | |
| | ) | Civil Action No. 7:13-0062-TMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Phillips Staffing, a/k/a S.B. Phillips, | ) | |
| Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Walter Lundy ("Lundy"), brought this action against the defendant, Phillips Staffing ("Phillips"), alleging discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq*. Specifically, Lundy alleges that Phillips fired him after it discovered that he was infected with the human immunodeficiency virus ("HIV"). Phillips has moved for summary judgment, asserting a nondiscriminatory reason for Lundy's discharge – withholding information on a medical questionnaire. (ECF No. 24). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(g), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court deny Phillips's motion. (ECF No. 41). Phillips has filed timely objections to the Report (ECF No. 43) and Lundy has responded to those objections (ECF No. 44). Accordingly, the matter is now ripe for review.

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects. *See* 28 U.S.C. §

1

636(b)(1). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. *See id.*

## I. Background

During the summer of 2011, Lundy was contacted by Phillips to fill a position at Hubbell Lighting ("Hubbell").[1] As part of the intake process, Lundy completed a Post Offer Medical Questionnaire, which asked if he had "any other disease, condition or impairment which is permanent in nature." Lundy answered 'no,' understanding the question to refer to conditions that would impact his work, partially due a statement on the questionnaire that "[t]he purpose of this form is to insure that you will be able to safely and successfully perform all job functions." However, the questionnaire also stated that "[f]ailure to answer this questionnaire truthfully may result in your termination for falsifying documents."

Lundy began working for Hubbell as an unloader. By all accounts, Lundy performed his job well and Hubbell decided to consider him for a forklift operator position. To get the position, Lundy had to apply for a commercial driver's license, which required a routine medical exam. In response to a question about his medications during that exam, Lundy indicated that he was taking medication for HIV and had been diagnosed in 2003. The medical report certified that Lundy was fit to receive a commercial driver's license, but also noted that he was taking a prescription for HIV.

A Phillips representative reviewed the medical report and, after comparing the report to Lundy's Post Offer Medical Questionnaire, concluded that Lundy did not fill out the questionnaire truthfully and should be terminated. Shortly thereafter, Phillips terminated Lundy's employment.

---

[1] Lundy originally named Hubbell as a defendant in this action, but voluntarily dismissed it in a joint stipulation of dismissal on February 11, 2013. (ECF No. 12).

## II.  Standard of Review

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law.  *Id.*

## III. Discussion

To survive summary judgment, Lundy must first establish a prima facie case of discrimination by showing: "(1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'"  *Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004)).

If Lundy makes this showing, then the burden shifts to Phillips to produce a legitimate, non-discriminatory reason for the termination.  *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).

If Phillips meets this burden, then "'the presumption of discrimination created by the prima facie case disappears from the case' and [Lundy] must prove that [Phillips's] 'proffered justification is pretextual.'"  *Id.* at 514 (quoting *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004)).

The Report recommends denying Phillips's motion for summary judgment because there is a question of material fact as to the true motivation behind Lundy's termination.  Specifically,

the Report finds that there is a question of fact as to whether Phillips reasonably concluded that Lundy lied on the questionnaire because (1) Lundy's understanding that the form was asking for conditions that would affect his job performance may be reasonable, (2) Phillips has not defined the term "any other disease, condition or impairment which is permanent in nature," and (3) the parties dispute whether Phillips agents made comments during Lundy's termination meeting regarding his HIV status.  According to the Report, these issues are enough to suggest that Phillips's reason for firing Lundy may have been pretextual.

Phillips objects to the Report's analysis, asserting that (1) Lundy is not a member of an ADA protected class, (2) Lundy was not meeting legitimate job expectations, (3) Lundy did not establish a reasonable inference of discrimination, and (4) Lundy did not present sufficient evidence to suggest pretext.[2]  The court will address each these objections in turn.

**A. Lundy's Prima Facie Case**

1.  HIV and the ADA

First, Phillips objects to the Report's finding that Lundy's asymptomatic HIV qualifies as a disability under the ADA because: (1) under Fourth Circuit precedent, that determination should be made on a case-by-case basis, and (2) Lundy has not demonstrated that his HIV affects a major life activity, as required under the ADA.

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such impairment"; or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  The Report found that Lundy's HIV satisfied the first definition, and the court agrees.

---

[2] Phillips also objects to some of the Report's factual findings.  However, in conducting its de novo review, the court does not rely on those findings, so it will not address those objections.

In 2008, Congress broadened this definition by enacting the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, which instructs courts to construe the term in favor of broad coverage.  Further, the EEOC regulations promulgated at the direction of the ADAAA clarify that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and that the term is "not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i) (2013).  Rather, the relevant inquiry is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  *Id.*  And, the ADAAA defines "major life activity" to include "the operation of a major bodily function, including but not limited to, functions of the immune system."  42 U.S.C. § 12102(2).

While Phillips is correct that the Fourth Circuit has not definitively held that asymptomatic HIV is a per se disability, the court finds that based on the evidence before it, Lundy's asymptomatic HIV meets the ADA's definition of disability.  *See Bragdon v. Abbott*, 524 U.S. 624, 631-42 (1998) (holding under the facts of that case that an asymptomatic, HIV-infected individual met the ADA's definition of disability).  Lundy has shown that he has HIV, which is a physical impairment that has a "constant and detrimental effect on the infected person's hemic and lymphatic systems from the moment of infection."  *Id.* at 637.  The lymph nodes, where the virus is most prevalent during the asymptomatic phase, play a key role in the body's immune response system, a major life activity under the ADAAA.  *See id.* at 636 (citing Staprans & Feinberg, Medical Management of AIDS 33-34).  And, Lundy has attested to getting "extremely sick" due to his diminished immune system.  (Affidavit of Walter Lundy, ECF No. 27-2).  Thus, Lundy has a physical impairment that substantially limits one or more major life activities.

2.  Legitimate Job Expectations

Next, Phillips argues that Lundy was not meeting legitimate job expectations because one such expectation is that employees complete their paperwork truthfully.  Phillips also objects to the Report's interpretation of *Warch v. Ohio Casualty Insurance Company*, 435 F.3d 510 (4th Cir. 2006), and offers *Warch* as authority for its position that an employer's legitimate job expectations can include compliance with company rules.

The court agrees that the legitimate expectations prong encompasses compliance with company rules, along with general job performance.  However, while "on summary judgment[,] an employer is free to assert that the job expectation prong has not been met, nothing prohibits the employee from countering this assertion with evidence that demonstrates (or at least creates a question of fact) that the proffered 'expectation' is not, in fact, legitimate at all."  *Warch*, 435 F.3d at 517.  In this context, 'legitimate' means that the employer's expectations cannot be a "sham designed to hide the employer's discriminatory purpose."  *Id.* at 518.

In this case, the record suggests that Lundy's general job performance was more than adequate.  So, Phillips is hanging its hat on Lundy's failure to comply with a company rule – accurately completing the medical questionnaire.  In response, Lundy offers evidence that this company rule, or at least the way in which Phillips enforces it, is not legitimate.  Lundy points to other examples of employees who were fired for falsifying documents, but whom Phillips could have wanted to fire for more self-serving or discriminatory reasons.  The court finds that Lundy has presented enough evidence to create a question of fact as to whether Phillips is using this company rule to hide a discriminatory purpose.[3]

---

[3] In addition, the court agrees with the Report that there is another relevant issue here: whether Lundy's nondisclosure of his HIV status in response to the specific question on the questionnaire violated company policy. Phillips objects to the Report raising this issue, asserting that the parties do not dispute the questionnaire's language. However, Lundy has testified that he did not understand the question to include illnesses that would not affect his

### 3. Reasonable Inference of Discrimination

Phillips also objects to the Report's finding that Lundy successfully raised a reasonable inference of discrimination. Specifically, Phillips asserts that the Report unreasonably relies on the temporal proximity between Phillips's discovery of Lundy's HIV-positive status and Lundy's termination.[4]

The court agrees with Phillips that the temporal connection could go either way – the moment Phillips discovered that Lundy was HIV-positive was the same moment it discovered that Lundy's medical questionnaire did not indicate that he was HIV-positive. So, the court is left with Lundy's testimony that Phillips employees made comments about his HIV status at his termination meeting.[5] Phillips argues that Lundy's testimony is unreliable because it is inconsistent and offers affidavits from the employees at the termination meeting in response. As a result, the court is left with two different sets of facts and a credibility dispute. If the court accepts Lundy's set of facts as true, as it must at this stage, then there is a reasonable inference of discrimination, or at least a disputed issue of material fact.

### B. Pretext

Finally, Phillips asserts that Lundy has not presented sufficient evidence of discrimination to show that his termination was due to unlawful discrimination. Specifically,

---

job performance and Phillips clearly reads the question differently. While this issue does not specifically play into the court's analysis, it does add to the overall picture of this case and warrants consideration.

[4] Phillips also asserts that the Report's analysis is based on a misguided interpretation of *Ennis v. National Association of Business and Educational Radio, Inc.*, 53 F.3d 55 (4th Cir. 1995). In its de novo review, the court does not rely on *Ennis* and so does not address this objection.

[5] Phillips argues that the Report and the court cannot consider this testimony because Lundy's affidavits contradict each other, and are, therefore, inadmissible. However, even assuming that Lundy's testimony is completely contradictory in the ways Phillips asserts, none of the factual discrepancies Phillips lists is material to the central dispute or to the court's analysis. The court also points out that it is not finding as a fact that Lundy's discharge was discriminatory, only that there is an issue of fact and that summary judgment is not appropriate. *See EEOC v. Town & Country Toyota, Inc.*, 7 Fed. Appx. 226, 232 (4th Cir. 2001) (unpublished) ("In making a prima facie case, the [plaintiff] does not have to carry its burden to the ultimate issue of discrimination. It just has to provide sufficient evidence to support an inference of discrimination.").

Phillips objects to the Report's reliance on the purported statements Phillips representatives made at Lundy's termination meeting and the magistrate judge's interpretation of *EEOC v. Town & Country Toyota, Inc.*, 7 Fed. Appx. 226 (4th Cir. April 13, 2001) (unpublished).

For the reasons stated above, the court finds Lundy's testimony regarding statements made at his termination meeting plausible and material. In addition, the court does not find fault with the Report's use of *EEOC v. Town & Country Toyota*. While the two cases are not identical, the court does not find Phillips's offered distinctions persuasive.

Phillips asserts that it fired Lundy for falsifying documentation. Lundy has offered evidence that Phillips representatives referenced his HIV status at his termination meeting. If Lundy's termination was truly for falsifying documentation, then the exact nature of his disease would not be relevant or warrant comment. Thus, "[t]here are contradictions between the non-discriminatory rationale for firing [Lundy] currently propounded by [Phillips] and the statements allegedly made by [Phillips representatives]" during Lundy's termination meeting. *Town & County Toyota*, 7 Fed. Appx. at 232-33. Such "[c]ontradictions between an employer's proffered explanation and the contemporaneous statements of the employer are convincing evidence of pretext" and "combined with the plaintiff's prima facie case, can be enough to permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 233.

### IV.  Conclusion

After a thorough review of the record in this case, the court agrees with the Report's apt analysis and incorporates it herein. Accordingly, Phillips's motion for summary judgment (ECF No. 24) is denied.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 3, 2014
Anderson, South Carolina